JOSEPH W. LIPPINCOTT

v.

WILLIAM LASHER et al.

The defendants were carriers of merchandise in the city of Salem. While not so employed they would spend their time with their horses and wagons in the public street, in front of the complainant's dwelling, and to such an extent that unpleasant and noxious odors were created, which were, at certain times, carried into the dwelling of the complainant, making his home uncomfortable. *Held*, that this was an unlawful use of a public street, and that the complainant is entitled to the aid of this court because he suffered special injury, and that his motives in filing his bill or in prosecuting his suit cannot be inquired into.

*Mr. W. T. Hilliard*, for complainant.

*Mr. M. P. Gray*, for defendants.

BIRD, V. C.

The complainant in this case occupies a dwelling-house in the city of Salem, on either side of which, and upon the side of the street opposite thereto, are many stores and other buildings used

Lippincott v. Lasher.

in carrying on various trades or occupations. It seems to be admitted that his is the only dwelling in that immediate vicinity. This dwelling is situated about twenty-five feet from the curbstone along the public highway, and in front of it, near the street, are one or more large trees. The defendants own horses and wagons and carry on the business of carting, doing whatever merchants or others solicit in that particular. For some time past, and especially during the summer and early fall of 1886, the defendants would spend their idle time, with their horses and wagons, in the shade of these trees, directly in front of the complainant's house, at farthest within fifty feet of the dwelling, and often within thirty-five feet, if not nearer. The testimony shows very clearly that during the greater portion of the day one or more of these defendants, and sometimes others, also, were there with their teams. To this effect the testimony of many witnesses upon the part of the complainant is as emphatic as can well be imagined. These witnesses are in no way impeached. Although the defendants have attempted to overcome the force of this testimony, yet they admit occupying this ground, with their horses and wagons, whenever, during the day, they were not actually engaged in the work of carting, and say that at such times they would remain there ten or twenty minutes. They nevertheless endeavor

NOTE.—The motive with which a party enters into a contract, is no part of the consideration, *Thomas* v. *Thomas*, *2 Q. B. 859 ; Austell* v. *Rice, 5 Ga. 472 ;* and so as to acquiring a mortgage, and then refusing to assign it as requested by the mortgagor, *Davis* v. *Flagg, 8 Stew. Eq. 491; Morris* v. *Tuthill, 72 N. Y. 575 ;* but, see *Foster* v. *Hughes, 51 How. Pr. 20 ; Lyon's Appeal, 61 Pa. St. 15 ;* or entering a credit on a note to bring the amount due thereon within a justice's jurisdiction, *Odle* v. *Frost, 59 Tex. 684. Query*, whether the contractor can testify as to his motive, *Oxford Iron Co.* v. *Spradley, 51 Ala. 171; Ohio Coal Co.* v. *Davenport, 37 Ohio St. 194.* Generally, a defendant's motive in committing a *tort*, is immaterial, *Cooley on Torts, chap. XXII ; Rogers* v. *Dutt, 13 Moore P. C. 209; Stevenson* v. *Newnham, 13 C. B. 285; McCune* v. *Norwich Gas Co., 30 Conn. 521; Heywood* v. *Tillson, 75 Me. 225 ; O'Callaghan* v. *Cronan, 121 Mass. 114; Hunt* v. *Simonds, 19 Mo. 583 ; Mahan* v. *Brown, 13 Wend. 261; Auburn Plank Road Co.* v. *Douglass, 9 N. Y. 444; Kiff* v. *Youmans, 86 N. Y. 324 ; Tucker* v. *Davis, 77 N. C. 330 ; Smith* v. *Bowler, 2 Disney (Ohio) 153 ; Jenkins* v. *Fowler, 24 Pa. St. 308; Fowler* v. *Jenkins, 28 Pa. St. 176 ; Glendon Iron Co.* v. *Uhler, 75 Pa. St. 467 ; Smith* v. *Johnson, 76 Pa. St. 191; Chatfield* v. *Wilson, 28 Vt 49 ; Fahn* v. *Reichart, 8 Wis 257.*

to impress the assertion upon the mind of the court that the period of time spent there was so short as to be of comparatively little importance.    I conclude, however, that it is well established that these defendants, although they may not individually have remained there so long a period of time as the complainant insists, day after day, yet that they did (one or more of them) spend a greater portion of the time, from day to day, at the locality in question, so that the place was occupied by them a very great portion of every working day.

It is claimed that the result of this was very detrimental to the full and complete enjoyment of the complainant's dwelling-house.    It deprived him of those comforts which he was entitled to as a resident there.    In consequence of the presence of these horses, flies became more numerous and troublesome than they otherwise would have been, and the atmosphere became foul and so vitiated as to oblige the complainant to close the doors and windows of his house.

Now, if the proof sustains these allegations of the complainant, most clearly he is entitled to an injunction.    None will pretend that the defendants had a right to appropriate any portion of the public street in this manner to their own private purposes.    The public highway is only designed for the use of the public as a

If one digs a well on his own land to divert the water from his neighbor's land, maliciously, he is liable, *Greenleaf* v. *Francis, 18 Pick. 117* (criticised in *Walker* v. *Cronin, 107 Mass. 564*) ; *Wheatley* v. *Baugh, 25 Pa. St. 528;* see *Brain* v. *Marfell, 20 Am. Law Reg.* (*N. S.*) *97, note; Ocean Grove* v. *Asbury Park, 13 Stew. Eq. 447*.

The motive influencing a complainant when he bought land adjoining defendants' may be inquired into, if he comes into equity for relief against defendants' alleged injury to such land, *Edwards* v. *Allouez Mining Co., 38 Mich. 46.*

Where a corporation obtains the title to land for the sole purpose of making a malicious use of it, the motive becomes material as affecting a question of their powers, *Occum Co.* v. *Sprague Manf. Co., 34 Conn. 529 ;* see *Gallagher* v. *Dodge, 48 Conn. 387.*

The same principles control the court of chancery, *Ramsey* v. *Gould, 57 Barb. 398.*

As to the necessary averments in pleading in such cases, *Cotterell* v. *Jones, 11 C. B. 713 ; Barber* v. *Lesiter, 7 C. B.* (*N. S.*) *175 ; Parmalee* v. *Baldwin, 1 Conn. 313 ; Spaids* v. *Barrett, 57 Ill. 289; O'Callaghan* v. *Cronan, 121 Mass. 114; Feltt* v. *Davis, 49 Vt 151.—*REP.

Lippincott *v.* Lasher.

passage-way—as a means of communication between different points.  It never was intended or designed to be used as a stable or as a private yard or other enclosure for the convenience of men of business.  And yet the complainant would have no special right to the protection of this court, unless he suffered some special injury over and above what the public generally suffer from such obstruction or use of the highway.  In my judgment he has shown such special injury.  It is clearly proved that the odors coming directly from this locality, and which were occasioned by the use made of this locality by the owners of these horses, penetrated the dwelling of this complainant, and made it not only unpleasant and uncomfortable, but exceedingly offensive. I do not forget that an offer was made to show by certain respectable citizens—glassblowers, who spent a great deal of their time near by, while they were not employed in their ordinary daily work—that they never noticed any of these offensive odors. It is said, however, that they were smokers, and generally employed their time sitting together thus in social chat, and smoking as well, and that they would not be very likely to detect the odors complained of, did they exist.  It is not necessary that I should determine the extent of the capacity of these men to detect these odors, nor whether they were in the immediate neighborhood at such times as were most favorable for their dissemination; for as long as the complainant and his wife and another witness are unimpeached before me, their testimony to the effect that, at certain periods of the day and in certain conditions of the atmosphere, it was very offensive in the front of their dwelling, I must give their testimony the credit that such evidence is always entitled to.  The fact that the dwelling of the complainant is the only one in that immediate vicinity cannot, in the least, detract from or diminish his rights as a citizen in a case of this character.

The defendants anxiously insist that if the injunction is made perpetual, it should be without costs, because the suit was instituted without justifiable cause, and has been prosecuted more for the costs than for any beneficial purpose.  Counsel pressed the point, that if the complainant had any rights, he was pur-

suing them with a malicious intent and spirit, and therefore he should not be encouraged by awarding to him the ordinary fees fixed by law which attend such a litigation. This view cannot be entertained. *Davis* v. *Flagg, 8 Stew. Eq. 491; Phelps* v. *Nowlen, 72 N. Y. 39; Chenango Bridge Co.* v. *Paige, 83 N. Y. 178; Kiff* v. *Youmans, 86 N. Y. 324.* The defendants were warned of the wrong they were doing the complainant, before he filed his bill, and they persisted in the course which the court now finds itself called upon to condemn. It is true that they ceased to make this a resting-place during their idle hours, after the bill was filed, but not until the preliminary injunction was served upon them. It seems to me, therefore, that to refuse the complainant costs would be doing a great injustice. I shall advise that the injunction be made perpetual.